THEODORE D. HALL vs. ARCHIE HODGE — Appeal from Fort Bend County.

In cases of contract where contradictory evidence has been adduced, and the veracity of the witnesses on both sides stands unimpeached, it is the peculiar province of the jury to weigh the evidence and determine the facts according to the convictions of their own minds. In such cases it cannot, with any propriety, be said that the verdict rendered is contrary to evidence, whether the jury gave the most weight to one or the other side. [*Post*, 428, 490; 1 Tex. 326; 5 Tex. 492.]

Where there are mutual outstanding open accounts, although the same be not between merchant and merchant, one should be considered as balancing the other; and, if a suit be instituted on such an account, and that of the defendant was not barred before the accrual of that of the plaintiff, the statute of limitations pleaded by the latter in bar of the former will not prevail, and there is nothing in the 2d section of the act of 1840, "allowing discounts and set-offs," restraining the application of this rule in such cases.

Where the set-off of the defendant exceeds the amount established by the plaintiff, it is error in the court to render judgment for costs in favor of the defendant. [5 Tex. 386.]

The plaintiff, being appellant in this court, sued the defendant for the recovery of $143.07, due upon an open account for goods and personal property sold to the defendant. The petition was filed on the 26th of November, 1844. The [324] answer of defendant, filed 4th April, 1845, presented pleas of the general issue, payment and set-off, with his account for $311.74 in reconvention. The plaintiff filed a replication of the statute of limitations to defendant's account. There was a verdict and judgment in favor of the defendant for $19.50 and costs. The plaintiff then moved for a new trial on the following grounds, viz.:

"1st. The jury, in giving damages to the defendant instead of the plaintiff, disregarded the evidence.

"2d. The verdict is contrary to evidence.

"3d. It is excessive.·

"4th. The court refused to charge the law of the case, and in its charge disregarded the law." The motion was refused.

The following were the charges asked for, viz.:

"1st. That an agency to contract debts is not to be implied from the relation of overseer and employer, unless it be for necessaries indispensable to the proper management of the business.

"2d. That if provisions are furnished by an employer, the right to contract for board by an overseer is repelled. 2d refused.

"3d. That if, since the debt sued on was contracted, the defendant presented a claim for only seventy dollars, he is precluded from now claiming more. 3d refused.

"4th. That all portions of the account accruing two years prior to the 4th of April, 1845, the date of filing the defendant's answer, are barred by statute." 4th refused.

The court charged the jury: "That if they believe from the evidence that George was employed by plaintiff to build his mill and superintend the hands he had at the place, the plaintiff is responsible for all debts necessarily contracted to advance the work and for the proper support of the hands. That the plaintiff is not responsible for the debt contracted for feeding the horses of George, unless the jury believe from [325] the evidence they were used, and were necessary, in the business of plaintiff."

The material facts proven on the trial were as follows: B. M. George proved that in 1842 and 1843 he was in plaintiff's employment as an overseer, and managed in opening for plaintiff a plantation and in building thereon a mill and other houses; that he was also, by special power of attorney, appointed agent to manage certain debts due to plaintiff; that he had no special power to contract debts on plaintiff's responsibility; that his right to do so resulted alone from his relation as overseer and manager; that the articles charged in plaintiff's account were sent by plaintiff to defendant from New Orleans, on defendant's own order, and delivered to defendant by the witness himself; that except the charge for commissions in plaintiff's account the defendant recognized it as just and right; that to

assist him in building the dwelling and mill on plaintiff's plantation he employed, on plaintiff's responsibility, Young and Henry as carpenters, and that having no place to sleep in he took board, for Sundays and rainy days and lodging, at defendant's, who lived near plaintiff's plantation; that, except corn for bread, plaintiff had provided all other necessary provisions to subsist the hands; that the bedding used by witness and the carpenters they themselves provided; that their board at defendant's was irregular; that he kept an account of the same, and that for the board of all forty-five dollars would be a sufficient remuneration; that no express contract was made by witness with defendant; that the horses kept by witness at defendant's were his own property, though used for plaintiff; that since plaintiff's account was contracted defendant called on witness for a settlement; that the account of defendant was not so much as plaintiff's by about sixty-five or seventy dollars.

William Young testified that B. M. George, representing himself as plaintiff's agent, employed him to work, and engaged board for him at defendant's, which commenced about [326] the 1st of February and continued until the 15th of April, 1843; that during the same time Henry was employed by George, as agent of plaintiff, and boarded with defendant, etc.

Washington H. Secrest testified that he was acquainted with B. M. George; that he bought pork of witness in the year 1842, as the agent of and for the plaintiff, and for which the plaintiff paid him in 1843; that George was living on Oyster creek and opening a farm for the plaintiff, and was boarding with the defendant; that he was informed by the plaintiff that said George was his agent, and knew that George contracted debts as such agent, and that plaintiff paid some of them.

*Campbell*, for appellant.

George had no right to contract debts on the responsibility of the plaintiff. He was plaintiff's hired servant, employed in opening and superintending his plantation. As a mere overseer he had no implied right to charge the plaintiff, and as to express right, he says himself he had none. It is clear that no such right resulted from the nature of his connection with

the plaintiff. True, Secrest says that plaintiff admitted to him that George was his agent, *but for what purpose or to what extent* he did not state. Hence, the admission must be referred to the special agency to adjust certain debts, with which George says he was clothed, and in giving to him this special power the plaintiff must be understood as withholding every other power. The maxim is, "*inclusio unius, exclusio est alterius.*" An agent with special powers cannot bind his principal when he transcends his powers, and a person dealing with the agent is bound to know the extent of his authority. 1 Pet. 290; 9 id. 628; see, also, 3 Wend. 83; 2 Saund. Pl. and Ev. 735; Amb. 498; 5 Johns. 58; 2 Bay, 505; 8 Wend. 494.

The greater portion of defendant's account was barred at [**327**] the time his answer was filed, and could not be pleaded in set-off. Bull. N. P. 180; Chit. on Con. 234; 17 Johns, 331. At the time the defendant pleaded in set-off he might have brought his cross action, 2 Camp. 594; and, aside from the statute, his only remedy was an action. Bab. on Set-offs, 1; 1 Rawle, 293. The verdict was contrary to the evidence.

*Herndon*, for appellee.

The testimony of Secrest settles the question of agency in this case, but even without this, the authority of George to contract debts to the extent he did with defendant would be implied from the relation one party sustained to the other. The proof of agency, as well as of the respective accounts, was a matter peculiarly for the determination of the jury, and their verdict will not be set aside unless manifestly against the evidence. Simms and Simms v. Price, Dall. Dig. 618.

The accounts existing between the plaintiff and defendant were mutual, running accounts, and not within the statute. Fitch v. Hilleary, 1 Hill. 292; Burnes v. Bryan, 1 Halst. 377; Smith v. Rencoster, 2 Halst. 357.

Mr. Justice LIPSCOMB delivered the opinion of the court.

The appellant filed his petition on the 26th of November, 1844, against the appellee, to recover the amount of an open account appended to his petition. The defendant pleaded, denying the plaintiff's account, set-off, and payment, and filed his

account against the plaintiff. A greater part of the items composing defendant's account would have been barred by the statute of limitations had he sued for them, but were not barred at the date of the accrual of the plaintiff's account. The plaintiff set up the objection of the statute to the defendant's account.

[328] From the evidence embraced in the statement of the facts sent up by the presiding judge, there seems to have been much contradictory testimony in establishing the account of the defendant. There was a verdict for the defendant for nineteen dollars and fifty cents, for which amount the court rendered judgment. The plaintiff entered a motion for a new trial, assigning several grounds; among others, that the verdict was contrary to evidence. The motion was overruled, and the plaintiff appealed. Several objections to the judgment of the court below have been presented by the appellant. It is believed, however, the most material are, first: Was the verdict contrary to evidence? Second, should the account of the defendant, under the circumstances, have been ruled out, under the operation of the statute of limitations?

As to the first, it will be seen, by a reference to the statement of facts, there was much contradictory testimony. There was evidence in favor of and adverse to the correctness of the account relied upon by the defendant, and presented a clear case for the peculiar province of the jury to weigh the evidence and give the preponderance to the conviction of their own minds. In cases of contradictory evidence, and the witnesses on both sides standing unimpeached, this is the only rule known to reason or to the law for determining the controversy; and although it may not be satisfactory to the judge, it must be submitted to and should never of itself constitute sufficient ground for disturbing the verdict. It cannot with any propriety in such cases be said that the verdict would be contrary to evidence, whether the jury gave the most weight to one or the other side. We can, therefore, perceive no error in the refusal to grant a new trial.

As to the second ground. It will be found, on looking into the evidence, that at the time of the accrual of the account of

the plaintiff on which he instituted his suit, the account of the defendant offered as a set-off was not barred by the lapse of two years, the time prescribed by the 1st section of [**329**] the statute of limitations for open accounts; and although not an account between merchant and merchant, it may be considered between the parties as an account current; and in such cases it is universally considered that one account is to balance or extinguish the other, as far as it goes. At common law, one could be given in evidence under the plea of non-assumpsit, in an action of assumpsit brought on the other.

If this is a correct rule, then at the date of the accrual of the plaintiff's account, the defendant's account, if not then barred by the statute, would be applied to the extinguishment of the plaintiff's debt, and in this way the plaintiff's account would, to that extent, be extinguished before the bar had interposed.

This is believed to be a fair exposition of the law, where there are mutual outstanding, open accounts. The only authority against this construction will be found to arise from enforcing a technical distinction between the plea of set-off and the evidence of payments that could be given in evidence under non-assumpsit at common law. Our plea of off-sets under the statute is not believed to have been intended to, nor does it in its terms, change the rule. The 2d section of the act allowing discounts and set-offs, Acts 4th Congress, p. 62, enacts, "That in every action in which a defendant shall desire to prove any payment on set-off, he shall file with his plea an account, stating distinctly the nature of such payment or set-off and the several items thereof, and on failure to do so he shall not be entitled to prove before the jury such payment or set-off, unless the same be so plainly and particularly described in the plea as to give the plaintiff full notice of the character thereof." We see nothing that would restrain the rule that one open account should be considered as balancing the other, in the statute directing the mode in which it should be pleaded. If the defendant's account had been barred before the accrual of the plaintiff's, the presumption of one balancing the other could not arise. This not being the fact in

the case at bar, [330] it is the opinion of this court the statute did not bar it when offered in evidence.

In the case under consideration the jury returned a verdict for the defendant, to the amount of the excess of his account over the plaintiff's account, nineteen dollars and fifty cents, and the judgment was rendered in his favor for that amount, together with all costs. So much of the judgment as gave the defendant costs is believed to be wrong, and not sustained by the law. In the 4th section of the statute before referred to will be found this provision: "Should the set-off of the defendant exceed the amount established by the plaintiff, then judgment shall be given in favor of the defendant for the amount that his claim may exceed that of the plaintiff; but the plaintiff shall recover the costs of the suit." The judgment in the case before us is in contravention of this statutory provision.

It must, therefore, be reversed and rendered in this court according to the law just cited.

---

[331] ALEXANDER S. JOHNSTON vs. JOHN P. LOOP, EDWIN MC-KINSTRY and REUBEN H. ROBERTS—Appeal from Fannin County.

Where a letter of attorney was fraudulently obtained, authorizing a confession of judgment in favor of the assignee of certain notes executed by the persons granting the power: *Held*, that the letter of attorney and judgment rendered in pursuance thereof was null and void.

The following are the material facts of this case, as disclosed by the record:

At the fall term of the district court of Fannin county, 1846, Palmer J. Pillans, on the third day of the term of said court, appeared in open court and filed a power of attorney, made by said A. S. Johnston and Reuben H. Roberts, to confess a judgment in favor of John P. Loop, on two notes payable to E. McKinstry or order, one for the sum of $533.34, and the other for the sum of $533.52, with interest. Petition had been